## STREEPER et v MYERS et

(2 cases)

Ohio Appeals, 2nd Dist, Franklin Co

Nos 2667 & 2675. Decided Aug 5, 1936

Charles M. Earhart, Columbus, for Mrs. Anna Trefter.

Pretzman, Dillon & Craig, Columbus, for Mrs. Cleta Finnicum Frye.

Charles Schwenker, Columbus, for Mrs. Ethel Watkins.

L. M. Sandles, Columbus, for Margie Eckles.

Pomerene & Boulger, Columbus, for appellees.

C. M. Vorhees, Columbus, for appellees.

## OPINION

BARNES, PJ.

The above entitled causes are in this court on appeal from the judgment of the Court of Common Pleas of Franklin County, Ohio. The action originated in the Probate Court of Franklin County, Ohio, and therein sought a declaratory judgment as to whether or not six building and loan certificates aggregating more than $35,000-.00 were the assets of the estate or the property of six claimed donees purporting to be passed to them as gifts before the death of the decedent.

The two cases were filed in this Court after January 1st, 1936; and consequently are controlled by the new appellate procedure.

Counsel were uncertain as to whether the title of the case in this court should be the same as in the Probate Court or that of the Court of Common Pleas. For this reason and none other appellants through an abundance of caution file both ways.

In the Probate Court after hearing it was adjudged that the money represented by the six certificates was not an asset of the estate but belonged to six donees under a completed gift made by the decedent in his lifetime.

The action was then carried to the Court of Common Pleas where the judgment was reversed and the property evidenced by the six certificates declared to be assets of the estate of George C. Myers, deceased.

The following summary of facts will make understandable the nature and scope of the controversy.

The only witness interrogated was one Richard H. Wild, secretary of the Railroad Building & Loan Company, of Columbus, Ohio. On and prior to September

4, 1934, Mr. William H. Myers, then in full life, was the owner of six certificates of deposit issued by the Railroad Building & Loan Company of Columbus, Ohio, all issued in the name of William H. Myers as payee, and in the respective amounts of $5000, $10,000, $10,000, $3300, $3900, $3600.

On September 4, 1934, Mr. Myers appeared at the office of the aforesaid Building and Loan Company and there contacted Mr. Richard H. Wild, the secretary, having with him the aforementioned six certificates of deposit on the reverse side of which he had previously made the following endorsements:

"Pay to Margie Eckels $5000—$100 monthly W. H. Myers."

"Pay to Cleta Finnieum Frye, Crtf. No. 26838 $10,000—$100 monthly—W. H. Myers."

"Mrs. Ethel Watkins, 13½ W. Pacemont Rd. $100 monthly—W. H. Myers."

"Mrs. Ida Rehl Crft. No. 26832, Zanesville, Ohio, $100.00 monthly—W. H. Myers."

"Mrs. Anna Threfter, 157 S. Ogden Ave. $4000. W. H. Myers."

"Hannah Neil Mission, East Main Street, Col. $3500.00—W H. Myers."

From the evidence it would appear that the endorsements were not made for the purpose of transferring title to the six persons therein named, but were simply a memorandum of Mr. Myers by which he conveyed the information to the secretary of the loan company just how he wanted the new certificates made out.

The secretary, Mr. Wild, was requested to make out new certificates of deposit in the respective names of the persons designated in the endorsement and for the amounts stated.

Mr. Wild, not being able to make out the new certificates immediately, the old certificates were left and a few days later the new certificates were taken to the home of Mr. Myers for his inspection, the same having been made out in the following amounts with the following payees and on four following writing on the reverse side:

"Payable $100 monthly."

| Amount | Payee |
|---|---|
| "$5000.00—Margie Eckles—$100 monthly" | |
| "$1000.00 — Cleta Finnicum Frye — $100 monthly" | |
| "$10000.00—Mrs. Ethel Watkins — $100.00 monthly" | |
| "$3300.00—Mrs. Ida Reihl—$100.00 monthly" | |
| "$4000.00—Mrs. Anna Trefter" | |
| "$3500.00—Hannah Neil Mission" | |

The new certificates were dated back to the last interest due-date so as to take care of the accumulated interest up to the time that the new certificates were actually issued.

Mr. Myers made the statement to the secretary, Mr. Wild, on September 4, 1934, when he left the old certificates at the office of the Building and Loan that he desired to draw the interest on the new certificates as long as he lived and this statement was repeated when the new certificates were taken to Mr. Myers' home a few days later. Each of the six certificates were identical in form except as to number of certificate, date of issue, name of payee, and the endorsement on back, "payable $100.00 monthly", which did not appear on two of the certificates. The first certificate introduced in evidence was defendant's exhibit 7a, and being typical, we copy it in full:

"Defts. Ex. 7-A
No. 35245                          $3300.00
THE RAIROAD
BUILDING AND LOAN COMPANY
Columbus, Ohio, July 16—1934

This is to Certify, That Mrs. Ida Reihl has deposited with The Railroad Building and Loan Company, of Columbus, Ohio Thirty Three Hundred & no/100 Dollars, in current funds, subject to the order of herself, in like funds. This Certificate is payable at the office of the Company, and bears interest at the rate of 3 per centum per annum, if left on deposit for Six months, or more, otherwise payable without interest.

This certificate is issued and accepted on the agreed conditions contained in the printed form on back hereof.

THE RAILROAD BUILDING AND
LOAN COMPANY,
R. H. Wild, Secretary       J. D. Streeper,
President."

The following written matter appeared as an endorsement on the back:

"Payable $100.00 monthly."

There also appeared on the back the following printed matter:

"At the end of the within named period if not presented at the office of this company for redemption, it shall be considered as having been renewed for the length of the original term. The mailing of a check fro the interest when due, to the last furnish-

ed address of the depositor, shall be deemed as payment in full of said interest; that this certificate is not negotiable, and the ownership can only be transferred at the office of the company and with its consent. This company may require thirty days written notice of demand for re-demption of this certificate, and in such event, the redemption hereof shall be subject to the same conditions and requirements governing withdrawal of savings account as contained in §28 of the Constitution and By-Laws. This company reserves the right to redeem this certificate after original term of its issue, by paying the face thereof and accrued interest to date of notice of redemption; such notice will be given in writing and mailed to the last furnished address of the depositor. The rate of interest payable hereon on date of renewal, shall be such as in effect at such date as established by resolution of the Board of Directors."

On the day that Mr. Wild, Secretary, presented the new certificates to Mr. Myers, the latter examined same and according to the testimony of Mr. Wild said they were exactly as he wanted them. Thereupon Mr. Myers produced six envelopes and each of the six envelopes was addressed with the name and post office of each of the donees. Each envelope contained a two cent stamp and on the one whose address was outside of the city of Columbus there was attached an additional one cent stamp. Each envelope was addressed in pencil and thereafter the respective certificates placed in the proper envelopes and sealed. Mr. Myers then delivered the envelopes to the secretary, Mr. Wild, with the following statement: "If anything happens to me, mail these to the parties." Mr. Wild agreed so to do. During this conversation Mr. Myers again repeated "Understand I want the interest on these as long as I live." No notations were made on the certificates relative to the payment of interest. However, Mr. Wild caused to be entered on the proper ledger page and file cards the following: "Int. to William H. Myers." The secretary, Mr. Wild, also had the names and addresses typewritten on each of the six envelopes. These envelopes remained in the possession of Mr. Wild continuously until and after the death of Mr. Myers, which occurred on February 12, 1935. Wild did not mail out the envelopes as he had agreed to do for the reason, as he stated, that it was suggested by the administrator, who was also president of the Build-

ing and Loan Company, that the question should be submitted to a court of competent jurisdiction for instructions. None of the persons in whose name the new certificates were made out had any knowledge of the actions of Mr. Myers until after his death. The several envelopes addressed and sealed were opened for the first time during the hearing in court and the proper certificates were found to be contained therein. The interest due on the several certificates, as the same became due was credited to the account of Mr. Myers as per the oral request. Beyond the taking credit for interest Mr. Myers neither exercised nor attempted to exercise further control or jurisdiction over the respective certificates either at the Building and Loan Association or in the hands of Mr. Wild.

From this state of facts we are called upon to determine whether or not under the law a gift was made to the several donees as represented by the six respective certificates of deposit in The Railroad Building and Loan Company of Columbus, Ohio. In fact this is the sole and only question that is presented for our determination. There is no conflict in the testimony nor is there any claimed error in the admission of testimony.

We have been favored with very able briefs presented by counsel representing the respective parties. Very rarely indeed do we have so complete and comprehensive a discussion of the law to which is added a wealth of pertinent citations not only presenting the Ohio law but that of other jurisdictions including United States Courts.

It will not be our purpose to refer to and analyze each of the numerous cases cited. To do so would serve no useful purpose and further would unnecessarily add to the length of this opinion. In the main we shall content ourselves with a recital of our conclusions with brief reference to the authorities which we think support same.

It is universally recognized in all jurisdictions that every person of sound mind and not under restraint has a right to make gift of his property to whom he pleases, so long as such gift does not work a fraud upon his creditors or is not within the inhibition of some statutory law.

The gift may include any and every kind of property. The manner and method of gift vary according to the character of the property passing from the donor.

For instance, real estate is usually transferred by duly executed deed of conveyance; certain chattels pass by the actual transfer of the physical property. Others, such as securities and choses in action, pass by endorsement of executed instrument calling for payment of money; and in still other instances, by purchase of security taken out in the name of donee, generally accompanied by delivery of the instrument evidencing the obligation.

Gifts are classified under two headings, gifts causa mortis and gifts inter vivos.

Gifts causa mortis are, as the word implies, gifts made in contemplation of death. In the instant case, the gift was not made in contemplation of death, so it is not necessary to consider the law applicable to this class of gifts. If the transfer of property is sustained at all, it must be as a gift inter vivos.

To constitute a gift inter vivos, there must be an intent on the part of the donor to make such gift. The gift must be fully executed and the donor must irrevocably part with the ownership, dominion and control of the subject of the gift. To execute the gift there must be a delivery and acceptance.

The delivery need not necessarily be made directly to the donee, but may be made to a third person for the donee. Under situations where the delivery is made to a third person for the donee, it is not essential that the donee know of the gift. Under such situations the possessory interest may be delayed.

It is also a requisite of a gift inter vivos that there be an acceptance, but where delivery is made to a third person for the donee, the law attaches a presumption of acceptance. This is on the theory that every one accepts a personal gain by way of gift.

Where the gift is made direct to the donee, there is little room for controversy except on questions of mental incapacity, undue influence or fraud. It is in the instances in which delivery is made to a third person, that controversy most frequently arises as to whether or not the transaction presents the requisite elements so as to constitute a gift inter vivos. Text writers on the subject of gifts have written pages on this phase of gifts inter vivos. The courts in this state and in other jurisdictions throughout the United States have been called upon innumerable times to analyze and determine whether or not under the particular facts in the case a gift inter vivos was shown. Many of the cases are border line and require a very careful study and analysis in order to clearly discern the controlling factor that decided the case one way or the other. Notwithstanding the vast amount of litigation pertinent to this subject of gifts, we think it may properly be said that the applicable law is definite and well defined, with very little divergence in various jurisdictions.

The difficulty arises in giving the proper application of the law under varying facts. The prevailing source of difficulty is where, as in the instant case, the property is passed to a third person. If it be shown under all the surrounding facts that the third person is the agent of the donor, the property will not pass to the claimed donee after the death of the donor for the reason that death terminates the agency. On the other hand, if it may be properly determined that the donor has constituted the third party the agent or trustee of the donee for the purpose of accepting delivery, then, if no other infirmities, the transaction may be construed as a consummated gift inter vivos, and possession may pass to the donee even after the death of the donor.

It is also determined that the donor under certain situations may retain the usufruct and income from the property during his lifetime without defeating the gift, but again the difficult problem is frequently presented as to whether or not there is shown an absolute and irrevocable gift of the corpus. In some cases, considering the circumstances under which the third party holds, the collection of interest or dividends is considered an act of dominion so as to refute the claim of absolute and irrevocable gift. In other instances the surrounding circumstances and all evidence attending the transaction are of such a character as to prompt a finding of absolute and irrevocable gift of the corpus, even though the usufruct and income is retained by the donor.

A very full and illuminating text is found on the subject of constructive delivery to a third person in Volume 28, Cor-

pus Juris, under the subject of gifts, page 639, which we quote:

"Delivery to Third Person. (a) In General. While there must be a delivery and acceptance to complete the gift, it does not necessarily follow that the delivery must be made directly to the donee, but the delivery may be to a third person for the benefit of the donee. Where a delivery is thus made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto, as disclosed by this evidence. If the property remains under the control of the donor, although in the keeping of the third person, and the latter is subject to his further direction as to its final disposition, then his relation is that of an agent. If, however, the property is delivered by the donor with intention that the present title and ownership shall pass to the donee and such intention is carried into effect by the language employed and the things done in relation thereto, then the gift is executed and the third person is a trustee for the donee."

Measured by the above ▮▮▮▮▮▮ standard, we are constrained to the view that the attending facts and circumstances in the instant case support a gift inter vivos.

One of the very strong circumstances supporting the conclusion is the manner and method used by the donor in executing the gift taken in connection with the nature of the property that was the subject of the gift.

On September 4, 1934, the donor, William H. Myers, had in his possession and was the owner of six certificates of deposit aggregating a total of $35,800.00. At that time the relation of debtor and creditor existed between Mr. Myers and the Railroad Building and Loan Company, of Columbus, Ohio. This relation of debtor and creditor between Myers and the loan association was terminated, the several certificates being returned to the association and marked paid. By direction of Mr. Myers, acquiesced in by the building and loan association, new certificates were issued in

the name of the six donees, and by reason of the terms of these certificates there was created a situation of debtor and creditor between the loan association and the six donees. By the terms of the certificates they were payable to no one except the donees named. The body of the certificate made reference to the printed conditions on the back and therein it was provided that the certificate was not negotiable, and ownership was only to be transferred at the office of the company and with its consent. This is just about as full, complete and irrevocable a gift as it is possible to make, and if necessary we think it could properly be determined that this arrangement with the loan association would constitute a gift inter vivos, with delivery to the association for the named donees. By the very terms of the certificate Mr. Myers could retain no supervision or control and hence the transaction would qualify as a consummated gift.

The certificates themselves are only the evidence of the obligation to pay. This obligation was to pay not Mr. Myers, but the several donees named in the respective certificates. The certificate recited that the donee had deposited the amount called for in the certificate, and the amount was payable only on the order of the payee.

Under this situation it is doubtful if it would make any difference where or in whose possession the certificates were placed.

However, the action taken by Mr. Myers relative to the certificates is pertinent evidence bearing on his intention to make a consummated gift. He did not retain these certificates in his own possession, but placed each in a properly addressed, properly stamped envelope and, after sealing same, requested the secretary of the building and loan association to mail same out if anything happened to him.

Counsel for the heirs argue persuasively that the words "if anything happens to me", places a limitation on the attempted gift and took away the necessary quality of a consummated, irrevocable gift. In other words, the claim is made that the word "if" denies a gift in presenti and disclaims delivery until the happening of some future and uncertain event.

We think the words used by the donor "if anything happens to me", under the facts and circumstances of the instant case have a well defined, definite meaning. It is an expression of common and general usage by the laity. As used by the donor Myers, it meant when he died. We are

aware of the rule that courts are not permitted to definitely accord a meaning to words where they are susceptible of different meanings, but where an expression is of common usage and conveys a fixed meaning, it is not only the privilege but the duty of the court to accept such meaning.

The individual members of this court before they were judges were practicing attorneys and each of us has had the experience of clients coming to our respective offices to make wills and using the similar expression that they thought they had better make a will so if anything happened to them the property can go as they desired it. It is well recognized that many people do not like to use the word death as it applies to themselves and their immediate family. To their minds the expression "if anything happens to me" is a softer term, but conveys the same meaning. The careful lawyer, through an abundance of caution in drawing instruments, might not use the expression but would be more definite and explicit. We find several instances in reported cases where the same or similar expressions have been used. We refer to a few:

Loomis v Loomis, 178 Michigan 221;
Adams v Harris, 118 Washington 189.
Colver v Steinhafel, 190 Wisconsin 468.

In each of the three cases the expression used was slightly different, but substantially the same. Likewise in each of the three quoted cases the court treated the expression as meaning "at death". In none of the cases does the court delivering the opinion indicate that there was any question about the meaning of the expression. We do not mean to say that the expression "if anything happens to me" under any and all circumstances or conditions means "at death", but we do hold to the view that under the facts and circumstances of the instant case, measured in the light of other similar situations, it is of such common usage and does have a definite meaning.

The further fact that the donor made the oral stipulation that he was to have the interest from the certificates so long as he lived, further supports our conclusion that the donor followed the common usage of expression in directing the secretary to mail out the addressed, stamped envelopes containing the certificates at his death.

It might be stated in passing that the building and loan association could more properly have provided in the certificates themselves that the interest was to be paid Mr. Myers as long as he lived, since under

the evidence it was the positive and direct stipulation of the donor that he was to receive the interest.

The payment of the interest to Myers was in direct violation of the provisions of the certificates, and had any question been raised. Myers could have sought and obtained a reformation. However, at this time this question is not material.

We cite the case of **Patrick v Parrott, et al, 92 Oh St 184,** which we think is in point and determinative of the instant case. In the reported case the gift was of real estate, but no different rule would apply except that the prescribed means of conveying or transferring differs, but in each instance delivery is a necessary attribute to the completed gift.

From the statement of facts in the reported case it appears that John Parrott executed deeds of conveyance to his next of kin. After the same were executed, acknowledged and attested by Parrott, the deeds were delivered to the notary with instructions to be taken by him and placed in the custody of the local village bank "with directions that said deeds should be safely kept and delivered at the decease of said John Parrott to his heirs." At the same time that the deeds were delivered to the notary, Parrott also executed the following written memorandum, the same to be kept with the deeds: "My request is that at my decease that the within deeds be given to the parties named." It further appears from the statement of facts that at the same time the deeds were executed Parrott executed a will and that the executed will together with the deeds was placed in an envelope and in accordance with instructions delivered by the notary to the bank cashier for safe keeping. It further appears that the entire bundle of papers was afterwards delivered to Parott when he desired to make a change in his will. Thereafter the package containing the new will and deeds was returned to the cashier and remained in his possession until the death of Parrott. From the facts stated the court delivered the following per curiam opinion:

"1. No control, dominion or power of revocation was reserved over the real estate by the donor.

"2. The cashier was the agent or trustee for the donees.

"3. There was a valid and legal delivery on the part of the donor, of the deeds to the grantees therein named."

In the case of **Rote v Warner et, 17 C C 350**, at page 355, the court quotes from Thornton on Gifts, as follows:

"That the delivery of the thing given may be made to a third person for the donee, and that if so made, under circumstances which indicate that the donor relinquishes all right to the possession and control of the thing given, with the intention to pass the present title in the donee, the gift will be sustained."

The case of **Johnson et v Darling et, 32 C. C. A. 113**, is also in point and supporting.

Thus far the question involved in the instant case has been considered in the light of the common law as stated and commented upon by text writers and the courts.

We now further consider the question in the light of the provisions of §8617 GC, and particularly as construed by the Supreme Court of Ohio in the case of **Union Trust Company v Hawkins, 124 Oh St 159.**

From a reading of the section it becomes apparent that the section was enacted primarily to cover trust agreements between trust companies and their clients. Of course, the law will not be limited to such contracts if, perchance, other contracts than those with trust companies come within its letter or spirit. This §8617, as construed by the Supreme Court, authorizes trust agreements with the power to alter, amend or revoke, whereby gifts of property might be made to take effect at the death of the creator of the trust. The section was attacked because of the provision providing for power to alter, amend or revoke, which was concededly contrary to the common law rule of gifts. The Supreme Court upheld the contract as coming within the provisions of the section, even though the instrument was not executed in conformity to the law of wills.

In the instant case, if there should be any infirmity denying a common law gift (which we do not find), the provisions of §8617 GC, following the construction of the Supreme Court in the Hawkins case, supra, would support the gift as a trust. In the instant case there was no attempt to make provision for alteration, amendment or revocation and in this particular our case would be distinguished from the Hawkins case, supra.

It is argued in the brief that there can not be a trust in the instant case for the reason that the statute contemplates a holding of a legal title by the trustee and that the beneficiary would only hold their interest as cestui que trust.

Let us start with the proposition, which needs no authority to support, that a trust may be created by parol. Was there not a parol contract entered into between Myers and the building and loan association? Prior to September 4, 1934, the association was indebted to Myers in the sum of $35,800.00. This certificate as of said date was delivered to the association and by them marked paid. They were still indebted in this sum of $35,800.00. The association agreed to pay to the six donees the aliquot parts of this sum total, divided in amount as he directed.

Instead of entering into a written agreement, in conformity to this arrangement, which would have been comparable to the written agreement in the Hawkins case, supra, the building and loan association followed a different technique to accomplish the same purpose. The fact that all parties concerned at all times had in mind that the association would follow the plan of issuing certificates, just as it did, will not alter the fact that the entire transaction comes within the spirit of the law as announced in the case of Union Trust Company v Hawkins, supra.

If, as in the Hawkins case, the trust agreement making disposition of funds at death, in which agreement there is a provision for alteration, amendment or revocation, can be supported by virtue of the above §8617 GC, we can see no reason why said section can not be invoked where similar gifts are made with different technique and in which there is no provision for alteration, amendment or revocation.

Finding, as we do, that the facts in the instant case support a consummated gift both under the common law and the statute, it therefore follows that our judgment must be that the fund in the building and loan association, evidenced by the certificates of deposit, belongs to the parties therein named and that such property is not assets of the estate.

The judgment of the Common Pleas Court will be overruled and that of the Probate Court affirmed.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.

(See Next Page for Application to Certify)

## ON APPLICATION TO CERTIFY

Decided Sept 22, 1936

By THE COURT:

We are asked to certify the above entitled cause on the claimed ground that our opinion is in conflict with the case of **Merchant et v The German Building & Loan Company et, 1 Oh Ap 47.**

It is a fixed policy of our court to aid in every way possible in securing a review of our opinions in the Supreme Court. However, on a question of conflict we are required under the statute to judicially pass on the question as to whether or not there is a conflict.

Examining the question by that standard we are not able to find any conflict between our opinion and the Merchant case, supra.

This Merchant case was cited in the brief of counsel and we had it under consideration before releasing our opinion. The facts are substantially and materially different.

The application to certify will be overruled.

BARNES, PJ, and HORNBECK and BODY, JJ, concur.